UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA THOMPSON and DENNIS THOMPSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:23-cv-00042-SRC |
| v. | ) | |
| | ) | |
| VINTAGE STOCK, INC., | ) | |
| | ) | |
| Defendant. | | |

## Memorandum and Order

Alleging that Vintage Stock sent dozens of unauthorized advertisements to their cell phone via text message, Sheila and Dennis Thompson brought this suit under the federal Telephone Consumer Protection Act and the Missouri do-not-call-list statute.  The Thompsons also propose a nationwide class of individuals who similarly received unauthorized text-message advertisements from Vintage Stock.  Vintage Stock moves to dismiss one of the Thompsons' three counts for failure to state a claim and moves to dismiss or strike their class allegations entirely.

## I.      Background

### a.      Facts

For purposes of deciding the motion to dismiss, the Court accepts as true the following well-pleaded facts.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Vintage Stock sent the Thompsons "dozens" of text messages over several years, "advertising goods or products for sale at [Vintage Stock]'s stores."  Doc. 19 at ¶ 9.  The Thompsons considered the text messages "annoying."  *Id.* at ¶ 14.  The text messages caused unwanted cell-phone use, noise, and vibration—all of which "interfered" with the text-message recipients' "exclusive use

of their property, cost them time," and "occupied their cell phones." *Id.* at ¶ 17.  The Thompsons attached to the amended complaint images of five text messages they received advertising ongoing promotions in July 2021 and November 2022.  Doc. 19-2.  The cell phone and associated cell-phone number receiving the text messages belong to Sheila Thompson, although the account is in Dennis Thompson's name.  Doc. 19 at ¶¶ 2, 6–7.  The Thompsons use the cell phone number for "family, household, and residential purposes," *id.* at ¶ 8, and registered their cell phone number "with the Federal Communication Commission's 'Do Not Call Registry'" and the "Missouri 'No-Call List,'" *id.* at ¶¶ 12–13.

The Thompsons also allege that receiving the text messages "interfered with their business or personal communications and privacy interests." *Id.* at ¶ 17.  This allegation, however, contains nothing more than generalized assertions that the Court does not accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680–81 (2009) (citations omitted).

**b.    Counts**

In count one, the Thompsons allege that Vintage Stock "violated the Federal Do Not Call List statute and regulations" by sending the text messages to the Thompsons' cell phone. *See* Doc. 19 at ¶ 23.  The Thompsons seek statutory damages of $500 per text message, and up to $1,500 per text message for willful or knowing TCPA and Federal Do-Not-Call List violations. *Id.* at ¶ 27.

In count two, the Thompsons allege that Vintage Stock violated one of the regulations implementing the TCPA, 47 C.F.R. § 64.1200(d). *See* doc. 19 at ¶¶ 39–45.  Specifically, the Thompsons allege that Vintage Stock (1) "failed to institute procedures for maintaining a list of persons who request not to be called"; (2) "failed to have a written policy, available upon demand, for maintaining a do-not-call list"; (3) "failed to train and inform its personnel engaged

2

in any aspect of telemarketing of the existence and use of the do-not-call list"; and (4) "failed to access the Federal Do Not Call register and database . . . every three months as required by the regulations of the [FCC]."  Doc. 19 at ¶¶ 40–43.  They explicitly pleaded the first alleged violation on information and belief but did not do so for the other three violations.  *Id.*  And as with the first count, the Thompsons seek in count two statutory damages of $500 per text message, or up to $1,500 per text message for willful or knowing TCPA violations.  *Id.* at ¶ 48.

In count three, the Thompsons allege that Vintage Stock violated Missouri's no-call-list statute, Missouri Revised Statute § 407.1098.  The Thompsons seek statutory damages of $5,000 per text message.  *Id.* at ¶ 64.  Each of the three counts "incorporate[s] by reference" the allegations in the prior paragraphs.  *Id.* at ¶¶ 21, 39, 60.  Further, in addition to seeking damages, the Thompsons seek to enjoin Vintage Stock from sending text messages violating the TCPA and Missouri do-not-call lists.  *Id.* at 6, 10, 12.

### c.    Proposed class definitions

The Thompsons allege "[o]n information and belief" that Vintage Stock "regularly sent text message [sic] to thousands of people per month advertising [its] goods or products, without the consent required by the [TCPA]" and the "Missouri No-Call List . . . ."  *Id.* at ¶ 16.  Each count contains a proposed nationwide class.

In count one, the Thompsons propose a nationwide class defined in the alternative as:

A.  All persons, who have registered their telephone number on the Federal Do-Not-Call List, who were sent by Defendant or on Defendant's behalf, on or after December 18, 2018, text messages advertising Defendant's business, goods, or wares; or

B.  All persons, who have an American telephone number, who have registered their telephone number on the Federal Do-Not-Call List, who were sent by Defendant or on Defendant's behalf, on or after December 18, 2018, text messages advertising Defendant's business, goods, or wares; or

C.  All persons, who have an American telephone number, who have registered their telephone number on the Federal Do-Not-Call List, who did not sign a statement that Defendant could telephone them, who were sent by Defendant or on Defendant's behalf, on or after December 18, 2018, text messages advertising Defendant's business, goods, or wares; or

D.  All persons, who have an American telephone number, who have registered their telephone number on the Federal Do-Not-Call List, who did not sign a statement that Defendant could telephone them, and who have not purchased any goods from Defendant more than 18 months before the text message from Defendant, who were sent by Defendant or on Defendant's behalf, on or after December 18, 2018, text messages advertising Defendant's business, goods, or wares; or

E.  All persons, who have an American telephone number, who have registered their telephone number on the Federal Do-Not-Call List, who did not sign a statement that Defendant could telephone them, and who have not purchased any goods from Defendant more than 18 months before the text message from Defendant, and who have not inquired or applied of Defendant about any of Defendant's goods within three months of the text message, who were sent by Defendant or on Defendant's behalf, on or after December 4, 2018, text messages advertising Defendant's business, goods, or wares.

*Id.* at ¶ 25.  In count two, the Thompsons include largely identical proposed alternative class definitions as count one, adding as an additional alternative definition "[a]ll persons who received a telephone solicitation call from Defendant after December 4, 2018."  *Id.* at ¶ 46.  In count three, the Thompsons propose a class defined as:

[E]very Missouri resident who, listed the telephone number texted on the Missouri No_Call [sic] list, who on or after December 4, 2020, received more than one text message advertising Defendant's business, goods, or wares, within any 12 month period.

*Id.* at ¶ 61.  In the next paragraph the Thompsons (presumably in the alternative) propose a nationwide class defined as:

[A]ll persons within the United States who listed the telephone number which was texted, who within the two years prior to the filing of this Class-Action Petition, received more than one telephone solicitation within any twelve-month period by or on behalf of Defendant, in violation of [Section 407.1098].

*Id.* at ¶ 62.

4

### d.       Procedural history

After Vintage Stock moved to dismiss count two and to strike the class allegations from the Thompsons' original complaint, the Thompsons filed a memorandum in response, doc. 18, then later that same day filed an amended complaint, doc. 19.  Considering the amended complaint, the Court denied Vintage Stock's first motion to dismiss and to strike as moot.  Doc. 20.  Vintage Stock moved to dismiss and strike the class allegations in the amended complaint, and the parties fully briefed the new motion.  Docs. 25, 26, 33, 34.

## II.       Standard

In their motion, Vintage Stock challenges all the Thompsons' claims.  It moves to dismiss counts one and three under Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, moves to strike those counts under Rule 12(f).  Doc. 26 at 1.  Vintage Stock also moves to dismiss count two pursuant to Rules 12(b)(1) and 12(b)(6), claiming that the Thompsons lack standing to assert that claim.  *Id.*  In the alternative, Vintage Stock moves to strike count two under Rule 12(f).  *Id.*  In making its arguments related to standing, Vintage Stock does not rely on Rule 12(b)(1); instead, it relies entirely on the Rule 12(b)(6) standard.  Whether the Court construes Vintage Stock's motion as a 12(b)(1) motion or a 12(b)(6) motion would not make a difference here.  When a defendant challenges a plaintiff's standing based on the face of a complaint, the Court applies the Rule 12(b)(6) standard regardless of whether the defendant raised the argument in a Rule 12(b)(1) or Rule 12(b)(6) motion.  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" (quoting *Osborn v. United States*, 918 F.2d 724, 729

(8th Cir. 1990)).  Accordingly, the Court applies the Rule 12(b)(6) standard to address Vintage Stock's facial attack.

        **a.**       **Rule 12(b)(6) standard**

Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice-pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, the Court considers only the facts alleged in the complaint when ruling on a motion to dismiss; however, the Court may also consider materials attached to the complaint in construing its sufficiency.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, the Court "must liberally construe a complaint in favor of the plaintiff."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556

U.S. at 678; *Twombly*, 550 U.S. at 555.  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Although the Court must accept all factual allegations as true, it is not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*.  This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*.  In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Id.* at 682; *Twombly*, 550 U.S. at 567.  The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 682.  The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* at 679.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

**b.    Rule 12(f) standard**

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (quoting *BJC Health Sys. V.*

*Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).  "[B]ecause this remedy is 'drastic' and 'often is sought by the movant simply as a dilatory or harassing tactic,' '[s]triking a party's pleading . . . is an extreme and disfavored measure.'"  *Id.* (alterations in original) (first quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.); then quoting *BJC Health*, 478 F.3d at 917).  "But despite this, it is sometimes appropriate to strike pleadings, such as when a portion of the complaint lacks a legal basis."  *Id.* (citing *BJC Health*, 478 F.3d at 916–18).

## III.    Discussion

Vintage Stock argues that the Court should dismiss count two because the complaint lacks any allegations of harm stemming from any purported violation of the TCPA's "technical requirements."  Doc. 26 at 9–10.  Vintage Stock also moves to strike the class allegations from the complaint for creating impermissible "fail-safe" classes, and for insufficient factual support.  Doc. 26 at 10–15.  The Court addresses these arguments in turn.

### a.    Count two

Vintage Stock moves to dismiss count two of the Thompsons' complaint.  In count two, the Thompsons allege that Vintage Stock violated one of the TCPA's implementing regulations, Section 64.1200(d).  Vintage Stock argues that the Court should dismiss this claim because the Thompsons do not have standing to assert this claim.  Doc. 26 at 9–10; doc. 34 at 1–2.  Below, the Court reviews the TCPA provisions relevant to Vintage Stock's claim and analyzes whether the Thompsons have standing to assert such a claim.

### i.    The TCPA and its implementing regulations

Congress passed the TCPA "to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers."  *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399

(2021) (quoting § 2, ¶¶ 1, 6, 105 Stat. 2394, note following 47 U.S.C. § 227).  As relevant in this case, the TCPA authorizes the Federal Communications Commission to promulgate certain regulations enforcing the statute's provisions, and it provides a private right of action for individuals who receive telephone calls in violation of those regulations.  *See* 47 U.S.C. § 227(c). The parties do not dispute that Section 227 also prohibits sending unsolicited text messages.  *See* docs. 26, 33; *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016) (noting that the parties did not dispute that "[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)"); *Facebook*, 592 U.S. at 400 n.2 (noting that the parties did not dispute that "the TCPA's prohibition also extends to sending unsolicited text messages," and assuming without deciding that it does (citing *Campbell-Ewald Co*, 577 U.S. at 156)).

The Thompsons' TCPA claim in count two alleges that Vintage Stock violated one of the implementing regulations:  Section 64.1200(d).  *See* doc. 19 at ¶¶ 39–45; doc. 27 at 2–5. Section 64.1200(d) in relevant part provides:

> (d)  No person or entity shall initiate any artificial or prerecorded-voice pursuant to an exception under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.  The procedures instituted must meet the following minimum standards:
>
> > (1)  Written policy.  Persons or entities making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > (2)  Training of personnel.  Personnel engaged in making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or who are engaged in any aspect of telemarking must be informed and trained in the existence and use of the do-not-call list.

(3)  Recording, disclosure of do-not-call requests.  If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request form a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. . . .

. . .

(6)  Maintenance of do-not-call lists.  A person or entity making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls.  A do-not-call request must be honored for 5 years from the time the request is made.

## ii.       Standing

"To have standing, [the Thompsons] 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  In its motion, Vintage Stock argued that the Thompsons failed to sufficiently plead an injury in fact.  Doc. 26 at 9–10.  After reviewing the parties' initial briefing on this issue, however, the Court found that supplemental briefing on all elements of standing would benefit the Court's review of whether the Thompsons have standing to bring count two.  Accordingly, the Court ordered the parties to simultaneously brief this question, doc. 35, which the parties complied with, docs. 36, 37.  The Court addresses each element of standing below.

## 1.       Injury in fact

"To establish an injury in fact, a plaintiff must show an injury that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Auer*, 902 F.3d at 877 (quoting *Spokeo*, 578 U.S. at 338).  "'Article III standing requires a concrete injury even in the

context of a statutory violation,' and a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Id.* (quoting *Spokeo*, 578 U.S. at 338). When a plaintiff alleges an intangible harm, the Court must consider whether the alleged "harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341 (citation omitted). At issue here is whether the Thompsons sufficiently pleaded their alleged intangible injury:  receipt of unwanted text messages. Doc. 33 at 2; doc. 37 at 2.

The Eighth Circuit has yet to address this question. It has, however, concluded that the receipt of answering machine messages is a concrete injury. *Golan v. FreeEats.com*, *Inc.*, 930 F.3d 950, 958–59 (8th Cir. 2019). And the four circuit courts that have addressed whether receiving an unwanted text message constitutes a concrete injury have all concluded that it does. *See, e.g.*, *Drazen v. Pinto*, 74 F.4th 1336, 1343–45 (11th Cir. 2023); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461–63 (7th Cir. 2020); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92–95 (2d Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017). Courts within this district have similarly concluded that the harm experienced because of receiving unwanted text messages constitutes a concrete and particularized injury. *See, e.g.*, *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 968 (E.D. Mo. 2018).

Finding no binding precedent on this issue, the Court must consider whether the harm of receiving unwanted text messages bears a close relationship to the harm addressed by a common-law tort. In answering this question, the Court finds the Eleventh Circuit's position, and the Seventh Circuit's similar position, persuasive.

In *Drazen*, the Eleventh Circuit concluded that the harm of receiving an unwanted text message is a concrete injury because it bears a close relationship to the harm addressed by the

common-law tort of intrusion upon seclusion.  74 F.4th at 1345.  The intrusion-upon-seclusion

tort, as the court explained, "consists of an (i) intentional intrusion (ii) into another's solitude or

seclusion, (iii) which would be highly offensive to a reasonable person."  *Id.*  An unwanted

phone call gives rise to liability for intrusion upon seclusion because it is an intrusion into

someone's privacy.  *Id.* (citations omitted).  The court found that "the 'undesired buzzing of a

cell phone from a text message . . . is" similarly "an intrusion into peace and quiet in a realm that

is private and personal."  *Id.* (quoting *Gadelhak*, 950 F.3d at 462 n.1).  This led the court to

conclude that the harm endured because of an unwanted text message bears a close relationship

to the harm addressed by the common-law tort of intrusion upon seclusion.  *Id.*

The Court finds no reason to depart from that conclusion in this case.  The intrusion into

a person's peace and privacy experienced because of an unwanted text message is the same type

of harm the TCPA and the common-law tort of intrusion upon seclusion were designed to

address.  Thus, if sufficiently pleaded, the receipt of unwanted text messages can constitute a

concrete and particularized injury.  Here, the Thompsons allege that they received unwanted text

messages on their cell phone that intruded on their peace, privacy, and seclusion.  Doc. 19 at

¶¶ 14, 17.  Specifically, the messages caused their phone to make noise and vibrate, which

annoyed the Thompsons.  *Id.* at ¶ 17.  The Court finds that they have alleged sufficient facts to

plead a concrete and particularized injury.  Accordingly, the Court holds that the Thompsons

have sufficiently pleaded an injury in fact.

### 2.     Traceability and redressability

In addition to being particular and concrete, the Thompsons' injury must be "fairly

traceable to the defendant's allegedly unlawful conduct."  *California v. Texas*, 141 S. Ct. 2104,

2113 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  The plaintiff

must "show a sufficiently direct causal connection between the challenged action and the identified harm" to satisfy this requirement. *Crain v. Crain*, 72 F.4th 269, 278 (8th Cir. 2023) (quoting *Agreed Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that traceability requires a "causal connection between the injury and the conduct complained of"). At this stage of litigation, the Court considers whether the Thompsons sufficiently pleaded factual allegations to establish this causal connection. *See Lujan*, 504 U.S. at 561. The Court finds that the Thompsons did not sufficiently plead factual allegations to demonstrate that their injury (receiving unwanted text messages) is fairly traceable to Vintage Stock's allegedly unlawful conduct (failing to meet Section 64.1200(d)'s requirements).

As relevant here, the Thompsons allege that Vintage Stock violated Section 64.1200(d) by failing to (1) "institute procedures for maintaining a list of persons who request not to be called"; (2) "have a written policy, available upon demand, for maintaining a do-not-call list"; and (3) "train and inform its personnel engaged in any aspect of telemarketing of the existence and use of the do-not-call list." Doc. 19 at ¶¶ 40–42. The Thompsons' complaint, however, contains no facts connecting Vintage Stock's alleged failures with their receiving of text messages. Most notably, the Thompsons do *not* allege in their complaint that they asked Vintage Stock to place them on its internal do-not-call list, or even that they asked Vintage Stock not to contact them. This means that even if Vintage Stock had done everything the Thompsons complain it failed to do—instituted procedures for maintaining the list, had a written policy for maintaining it, and properly trained its employees—the Thompsons would be in the exact same position: they would have received the unwanted text messages from Vintage Stock because they would not have been on Vintage Stock's internal do-not-call list. In other words, even if

Vintage Stock fully complied with Section 64.1200(d)'s requirements, the Thompsons would have suffered the exact same harm.

As pleaded, the Thompsons' injury is simply not traceable to any of Vintage Stock's allegedly unlawful conduct. *See Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who <u>never</u> said . . . they didn't want to be called again. . . .  [T]he receipt of a call is not traceable to [the defendant's] failure to comply with the internal do-not-call list regulations if the recipient wouldn't have been on the list in the first place even if it had been maintained." (emphasis in original)); *Thompson v. Genesco*, No. 4:23-cv-00292-SRC, 2024 WL 81187, at *5 (E.D. Mo. Jan. 8, 2024) ("Th[e] internal list, whether extant or not, is useless to [plaintiff] if it never would have featured his name or phone number.  Therein lies the traceability problem:  if [plaintiff] cannot allege a way—any way—in which he would appear on [the defendant's] internal do-not-call list, then his injury cannot be traced to [the defendant's] failure to maintain one.").  Accordingly, the Court finds that the Thompsons failed to sufficiently plead the traceability element of standing.  Because this resolves whether the Thompsons have standing to assert count two, the Court does not reach the question of whether the Thompsons' alleged injury is redressable.

### 3.    Conclusion

As explained above, the Court finds that the Thompsons lack standing to assert count two.  The Court accordingly dismisses that count without prejudice.

### b.    Counts one and three

Vintage Stock attacks Thompsons' first and third counts, which raise federal-law class allegations and state-law class allegations respectively, on two alternative grounds.  Doc. 26

at 10–15.  Vintage Stock moves to dismiss the class allegations for lack of factual support.  *Id.*
at 10–12.  Alternatively, Vintage Stock moves to strike the class allegations because they are
fail-safe.  *Id.* at 12–15.  The Court addresses each argument in turn.

### i.     Failure to plead factual support

Vintage Stock asks the Court to dismiss the Thompsons' class allegations for failure to
plead sufficient factual support.  *Id.* at 10–12.  While "[t]he propriety of class action status can
seldom be determined on the basis of the pleadings alone," *Walker v. World Tire Corp., Inc.*, 563
F.2d 918, 921 (8th Cir. 1977), "class claims that fail to meet the requirements of Rule 23 may be
properly dismissed by granting a Rule 12(b)(6) motion," *McCrary v. Stifel, Nicolaus & Co., Inc.*,
687 F.3d 1052, 1059 (8th Cir. 2012).  The Eighth Circuit also allows district courts to strike class
allegations at the pleading phase, *Donelson*, 999 F.3d at 1092, and it follows that district courts
can dismiss class allegations at that phase for failure to plead a factual basis.

Vintage Stock takes issue with the Thompsons' "[o]n information and belief" allegation
that it "regularly sent text message[s] to thousands of people per month," doc. 26 at 10 (quoting
doc. 19 at ¶ 15), "without the consent required by the" TCPA, *id.* (citing doc. 19 at ¶ 16).
Vintage Stock also takes brief issue with the Thompsons' on-information-and-belief allegation
that the class is too geographically diverse and has too many members to allow joinder of all
members, but it advances no argument regarding that allegation.  *See id.*

The Thompsons defend their allegation by pointing to text messages they received from
Vintage Stock.  Doc. 33 at 11; *see also* doc. 19-2.  They claim that these text messages are
"generic advertisements and obviously designed to be sent to many people."  Doc. 33 at 11.  The
complaint offers no other factual support for the claim that Vintage Stock texted thousands of
people.  Thus, the fact that Vintage Stock sent text messages to the Thompsons is the only

pleaded factual support for the allegation that Vintage Stock sent text message advertisements to thousands of people without their consent. *Id.* The sufficiency of the Thompsons' allegation, therefore, hinges upon that sole fact and their "on information and belief" allegation that Vintage Stock texted thousands of people.

In the Eighth Circuit, allegations pleaded "on information and belief" are not categorically insufficient to state a claim for relief. *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023). Rather, these allegations may suffice to plausibly state a claim where "[1] the proof supporting the allegation is within the sole possession and control of the defendant or [2] where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Id.* However, "pleadings made on information and belief cannot cure an otherwise threadbare complaint" "[w]ithout some factual basis for the inference of liability or the reasonable belief that the information supporting such liability is in the sole possession of the defendant." *Id.* at 955.

The detailed factual allegations that Vintage Stock desires regarding the Thompsons' allegation that it sent text messages to thousands of people are somewhat implausible at this stage, but understandably so. Information regarding to whom Vintage Stock sent the messages, and exactly how many people received them, falls within the sole possession of Vintage Stock. Vintage Stock has not argued that any other avenue exists for the Thompsons to obtain this information, and it remains unclear to the Court that a means exists for obtaining this information outside of discovery. The Thompsons have, as Vintage Stock does not dispute, adequately pleaded that it violated the TCPA by sending them the text messages. Accepting those factual allegations as true and coupling them with the allegation that Vintage Stock sent the same

messages to others, it necessarily follows that the Thompsons have adequately pleaded the class allegations. The Court therefore denies Vintage Stock's motion to dismiss the class allegations.

### ii.      Motion to strike class allegations

Next, Vintage Stock asks the Court to strike the Thompsons' class allegations because they are "fail-safe," doc. 26 at 12, meaning that they are classes "defined to preclude membership unless a putative member would prevail on the merits," *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). Further, Vintage Stock complains that the Thompsons' "spaghetti-on-the-wall approach" to pleading class definitions would require merits-based inquiries and determinations regarding Vintage Stock's liability to each class member. Doc. 26 at 12–13; doc. 34 at 6. The Thompsons respond by first arguing that the Court should decide this issue at the class-certification stage, and then arguing that many of the alternative class allegations are not fail-safe-class definitions. Doc. 33 at 5–7.

As an initial matter, the Eighth Circuit instructs that "a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification." *Donelson*, 999 F.3d at 1092. Further, it is "sensible" to strike class allegations at the pleading stage "if it is 'apparent from the pleadings that the class cannot be certified.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1383 (3d ed.)). This is "because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Id.* (quoting *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). Striking class allegations at this stage "is consistent with Rule 23(c), which governs class-action certification, because Rule 23(c)(1)(A) directs district courts to decide whether to certify a class '[a]t an early practicable time,' and

17

nothing in Rule 23(c) indicates that the court must await a motion by the plaintiffs." *Id.* (alteration in original) (first quoting Fed. R. Civ. P. 23(c)(1)(A); then citing *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

The Eighth Circuit prohibits class definitions that "preclude membership unless a putative member would prevail on the merits"—also known as a fail-safe class. *Orduno*, 932 F.3d at 716; *see also Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (reversing class certification because the class definition qualified as an impermissible fail-safe class—it incorporated two contested elements of liability, making membership in the class "depend[ent] upon having a valid claim on the merits"). Fail-safe classes are problematic because they "allow putative class members to seek a remedy but not be bound by an adverse judgment." *Orduno*, 932 F.3d at 716 (citations omitted). These classes are unmanageable "because the court cannot know to whom notice should be sent." *Id.* at 717 (citation omitted). Further, the Eighth Circuit has said that courts may address these issues at the class-certification stage, but it has not required courts to wait until such time to address fail-safe classes. *See id.*

Vintage Stock properly challenges some, but not all, of Thompsons' alternative class allegations in the first and third counts. In the first count, Vintage Stock challenges language related to advertising, consent, previous purchases, and recent inquiry about goods. Doc. 26 at 12–13. The Court is particularly concerned with the language related to advertising and consent, especially considering the common questions of law and fact the Thompsons plead. The Thompsons' first question of law and fact common to the class relates to whether the members of the class consented. Doc. 1 at ¶¶ 31(a), 52(a). This supports that including consent as part of the class definition would make it a fail-safe class because if the answer is "no" for a certain class member, that member would not "be bound by an adverse judgment." *Orduno*, 932 F.3d at 716

(citations omitted).  He or she would simply not be part of the class.  Similarly, the Thompsons'

second common question of law and fact is whether the text messages "contain material

encouraging the purchase of Defendant's goods or products."  Doc. 1 at ¶¶ 31(b), 52(b).  Here

again, if the answer is "no," the members receiving those texts don't lose; they simply are not a

part of the class.  For these reasons, the Court strikes allegations C, D, and E from paragraph 25

and allegations D, E, and F from paragraph 46.

One class definition in count three similarly includes a fail-safe class, so the Court strikes

that allegation.  The Thompsons outline a proposed class including persons who "received more

than one telephone solicitation . . . in violation of" Missouri Revised Statute 407.1098.  Doc. 19

at ¶ 62.  To certify this class, the Court would have to determine whether a text message is a

"telephone solicitation" under Section 407.195, and whether it violates the statute at issue.  On

its face, this proposed class requires the Court to address contested elements of liability.

Accordingly, it is an impermissible fail-safe class, and the Court strikes this definition.  Doc. 19

at ¶ 62.

While traditionally, "[a]n order striking class allegations is 'functional[ly] equivalent' to

an order denying class certification," *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711 n.7 (2017)

(second alteration in original) (quoting *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 110–11

(4th Cir. 2013)), that is not the case here where the Court strikes only portions of the alternate

class allegations.  Vintage Stock presents no support for the proposition that striking some

alternative class allegations constitutes a complete denial of class certification.  *See* docs. 26, 34.

Further, Vintage Stock can show that only some alternative class definitions are fail-safe classes,

not that all are.  It therefore presents no valid claim for why the Court should strike all class

19

definitions.  Accordingly, the Court grants the motion to strike in part, striking class definitions

C, D, and E from paragraph 25; D, E, and F from paragraph 46; and those in paragraph 62.

**IV.**       **Conclusion**

As explained above, the Court grants Vintage Stock's [25] Motion to Dismiss Count Two

and grants its Motion to Strike in part.  The Court dismisses count two for lack of standing and

strikes from the complaint, doc. 19, class definitions C, D, and E from paragraph 25; D, E, and F

from paragraph 46; and those in paragraph 62.

So ordered this 8th day of February 2024.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE