UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHEILA THOMPSON and DENNIS THOMPSON,

    Plaintiffs,

v.

VINTAGE STOCK, INC.,

    Defendant.

Case No. 4:23-cv-00042-SRC

## Memorandum and Order

In 2019, Sheila Thompson entered her telephone number into a credit-card system at one of Vintage Stock, Inc.'s stores. Despite expressing to a Vintage Stock employee her disinterest in receiving advertisements, Sheila, a couple years later, started receiving text messages that advertised Vintage Stock's sales. Now, she and her husband (Dennis) claim that Vintage Stock violated the Telephone Consumer Protection Act and the Missouri law by sending Sheila those text messages. Vintage Stock seeks summary judgment on these claims. As explained below, the Court grants Vintage Stock summary judgment on some claims and remands others to the state court.

**I.    Background**

    **A.    Factual background**

The Court finds the following facts undisputed for purposes of summary judgment, most of which the parties agree are undisputed. The Court notes below the facts that the parties dispute.

Vintage Stock operates stores that sell a wide variety of entertainment products and that buy back from customers movies, games, and CDs. Doc. 68-1 at ¶ 3. Sheila[1] has visited Vintage Stock's stores "a handful" of times. Doc. 72-2, Sheila Thompson Depo. Tr. at 55:15–22. Her first two visits occurred in September or October 2019. Doc. 72 at ¶ 8. And at least one visit occurred after July 19, 2021. *See* doc. 72-2, Sheila Thompson Depo. Tr. at 57:1–4; doc. 19-2 at 1.[2] The record does not contain evidence regarding when Sheila's other two visits occurred except that those visits occurred before August 19, 2024 (the date of Sheila's deposition). Doc. 72-2 at 1.

During her first visit, Sheila purchased movies for her daughter. *Id.* at 53:18–54:11. As she did so, she spoke with a Vintage Stock employee about selling movies back to Vintage Stock. *Id.* at 53:18–54:2. That employee told Sheila that, if Sheila wanted to sell movies to Vintage Stock at a later time, Vintage Stock needed her phone number so that Vintage Stock could pull up Sheila's account when she wanted to sell back the movies. *Id.* at 54:12–19, 55:1–11. Sheila told the employee she did not want advertisements, *id.*, but entered her phone number into Vintage Stock's VeriFone system, which read: "Enter your phone # to receive coupons and sales notices. Message and data rates may apply," doc. 72 at ¶ 9; doc. 68-2 at 2. The VeriFone system further provided options to "SKIP" or "SUBMIT." Doc. 68-2 at 2. But the VeriFone system neither had a spot for a person to sign nor mentioned Vintage Stock's buy-back program. *Id.*

Vintage Stock asserts that it "obtains consent to send messages through the customer's entry of their phone number" into its VeriFone system and that it "manages a text message

---

[1] The Court refers to Sheila Thompson and Dennis Thompson by their first names only for ease of identification and not to imply any familiarity.
[2] The Court cites to page numbers as assigned by CM/ECF.

program providing notice of discount offers if the customer affirmatively consents to receive such messages." Doc. 72 at ¶¶ 2–3 (citations omitted). The Thompsons "[d]eny" these asserted facts, doc. 72 at ¶¶ 2–3, but the evidence supports Vintage Stock's asserted facts, doc. 68-1 at ¶¶ 4–5; doc. 68-2 at 2, and the Thompsons have not provided any evidence to the contrary, *see* doc. 72 at ¶¶ 2–3. Accordingly, the Court finds it undisputed that Vintage Stock obtains consent to send messages to customers by having them enter their phone numbers in the VeriFone system and that it manages a text-message program that provides notice to customers who affirmatively consented to receive messages about discount offers. Doc. 68-1 at ¶¶ 4–5; doc. 68-2

Instead of submitting evidence to contradict Vintage Stock's asserted facts, the Thompsons "admit[]" to certain things, including that "if a customer enters" her cellphone number into the VeriFone system, Vintage Stock will send the customer text messages regardless of whether the customer tells a Vintage Stock employee that she does not want to receive text messages, and that the VeriFone system does not explicitly mention text messages. Doc. 72 at ¶¶ 2–3. The Court construes these "admissions" as assertions of fact and addresses each below.

To begin, the record supports in part the Thompsons' assertion that the VeriFone system does not explicitly mention text messages. As found above, the VeriFone system explicitly stated: "Enter your phone # to receive coupons and sales notices. Message and data rates may apply." Doc. 68-2 at 2. Although the VeriFone system does not include the word "text," the VeriFone system does discuss "messages" and "data rates," which apply to text messages. The Court therefore draws the inference that the system implicitly mentions text messages.

Further, the evidence that the Thompsons cite supports their other assertion in part, and Vintage Stock has not identified any evidence to contradict it. *See* doc. 72 at ¶¶ 2–3. Thus, the Court finds as a fact that Vintage Stock's corporate designee "assume[d]" that, if a customer entered her phone number on the VeriFone system but told the employee that she does not want

3

to get text messaging, the customer would receive text messages.  Doc. 72-1, Rodney Spriggs Depo. Tr. at 27:7–13.  Further, the corporate designee "speculat[ed]" that "you could make sure" that text messages are not received if "[y]ou could get ahold of us or something, but" in that circumstance "you're counting on an employee to try to figure out to call somebody," which "gets difficult . . . if the store is busy and stuff, who knows." *Id.* at 27:13–19.

The Court further finds that, when Vintage Stock sends text messages to customers, the message contains information about sales and instructs the customers that it can stop receiving messages by replying "STOP."  Doc. 72 at ¶ 6.  Sheila, for example, received the following five texts from Vintage Stock:

- VINTAGE STOCK:  Buy 2, Get 1 Free!  July 19-22, 2021, only with this coupon: https://txt.st/RCWrmB Terms & Conditions: https://txt.st/BTEQMZ Reply STOP to stop.

- VINTAGE STOCK:  Black Friday Purge 11/25/22

- VINTAGE STOCK:  Cyber Monday sale!  11/28/22

- VINTAGE STOCK:  Cyber Monday sale!  11/28/22  ONLINE ONLY: 40% off all used items & free shipping on orders $100+ https://bit.ly/3i7nXr2  Reply STOP to stop

- VINTAGE STOCK Our ANNIVERSARY SALE starts tomorrow Nov 4–6, 2022 HUGE deals in stores & online Details https://bit.ly/3UiWeNQ Reply STOP to stop

- VINTAGE STOCK:  Buy 1, Get 1 Free under $25 – Oct 10–13

Doc. 19-2 at 1–3, 5; doc. 72 at ¶ 10.  Further, the Court finds that Sheila received one of these texts on or about July 19, 2021, doc. 19-2 at 1, one on November 3, 2021, *id.* at 5, one on or about November 25, 2022, *id.* at 3, and one on November 27, 2022, *id.*  The Court also finds that the record lacks sufficient information to conclude when Sheila received the text about the

4

October sale because that text lacks a year.  *See id.* at 5.  Sheila never texted back "STOP" to any of the messages.  Doc. 68-5 at 2.

After Sheila began receiving the texts listed above, Sheila continued to visit Vintage Stock's stores and never called Vintage Stock to complain about the messages in any way. Doc. 72-2, Sheila Thompson Depo. Tr. at 57:1–4.  Vintage Stock asserts that after Sheila started receiving text messages, Sheila never spoke to a cashier or customer service employee to revoke her consent or stop the messages.  *See* doc. 72 at ¶ 12.  The Thompsons "[d]eny" this and assert that Sheila "typed in her cell number but verbally, clearly, and expressly told the Vintage clerk that she did not want any text messages." *Id.* (citation omitted).  The Thompsons' assertion, however, does not contradict the asserted fact because that conversation occurred before Sheila started receiving text messages.  Accordingly, the Court finds as a fact that, after Sheila started to receive text messages, Sheila did not tell a cashier or customer-service employee to stop the messages.  Doc. 72-2, Sheila Thompson Depo. Tr. at 57:5–7.

Dennis, on the other hand, did not receive any messages from Vintage Stock.  Doc. 68-7, Dennis Thompson Depo Tr. at 13:8–10.  He maintains a separate cellular telephone from Sheila, and he does not use Sheila's phone.  *Id.* at 13:5–7.  Further, during his deposition, Dennis "disavowed any economic damage and admitted that their cellular telephone bill did not increase as a result of [Sheila's] receipt of messages from Vintage Stock."  Doc. 68 at ¶ 16.

In addition to the VeriFone system, Vintage Stock displays, in its stores, advertisements that tell customers how they can receive sale alerts and coupons.  Its in-store advertisements state: "SUBSCRIBE TODAY to get SALE ALERTS & COUPONS by text message!  Message & Data Rates May Apply.  Up to 2 messages per month.  Text HELP to 88284 to get help.  Text STOP to 88284 to stop.  For more information, visit: https://vintagestock.com/about/terms-of-use."  Doc 68-3 at 2.  The terms of use include provisions regarding how to stop receiving text

5

messages about sales.  Doc. 68-4 at 4–5.  Sheila, however, has never seen or read this advertisement in any of Vintage Stock's stores, or visited Vintage Stock's website to read the terms of use.  Doc. 72-2, Sheila Thompson Depo. Tr. at 64:17–23.

### B. Procedural background

The Thompsons assert three claims in their amended complaint:  two Telephone Consumer Protection Act claims and a Missouri do-not-call-list claim.  Doc. 19.  They also assert these claims as class-action claims.  *Id.*  In February 2024, the Court remanded one of the TCPA claims, which asserted that Vintage Stock violated a TCPA implementing regulation (47 C.F.R. § 64.1200(d)), for lack of standing.  Doc. 38 at 10–14; doc. 54 at 4 (remanding the claim in light of *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786 (8th Cir. 2018)).  And the Court struck several of the proposed class definitions as fail safe, i.e., class definitions that preclude membership unless the putative member would prevail on the merits.  Doc. 38 at 17–20.

In March 2024, the Court held a Rule 16 scheduling conference, doc. 50, and entered a case-management order setting several deadlines for this case, doc. 51.  One of those deadlines related to the Thompsons's filing a motion for class certification.  Doc. 51 at 2 (setting a deadline of September 1, 2024, as requested by the Thompsons (*see* doc. 47 at 3)).  The deadline for a motion for class certification came and went with no filings by the Thompsons.  To this day, the Thompsons have neither filed a class-certification motion nor sought to pursue the class claims in any other way.  *See* doc. 67 (recognizing the Thompsons' failure to file a class-certification motion and claiming that the only remaining claims in this case are the Thompsons' individual claims); doc. 71 (crickets).

Vintage Stock now moves for summary judgment on the Thompsons' claims.

6

**II.      Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)).  Self-serving, conclusory statements without support are insufficient to defeat summary judgment.  *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.     Discussion**

The Court considers Sheila's TCPA claim, Dennis's TCPA claim, and the Thompsons' Missouri do-not-call-list claim.

7

A. Sheila's TCPA claim

Congress passed the TCPA "to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (quoting § 2, ¶¶ 1, 6, 105 Stat. 2394, note following 47 U.S.C. § 227). As relevant in this case, the TCPA authorizes the Federal Communications Commission to promulgate certain regulations enforcing the statute's provisions, and it provides a private right of action for individuals who receive telephone calls in violation of those regulations. *See* 47 U.S.C. § 227(c). The parties do not dispute that section 227(c) also prohibits sending unsolicited text messages. *See* docs. 26, 33; *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016) (noting that the parties did not dispute that "[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)"); *Facebook*, 592 U.S. at 400 n.2 (noting that the parties did not dispute that "the TCPA's prohibition also extends to sending unsolicited text messages," and assuming without deciding that it does (citing *Campbell-Ewald Co*, 577 U.S. at 156)).

Sheila's TCPA claim in count one alleges that Vintage Stock violated one of the implementing regulations: 47 C.F.R. § 64.1200(c)(2). *See* doc. 19 at ¶¶ 21–38. Section 64.1200(c)(2) prohibits entities, like Vintage Stock, from initiating "any telephone solicitation" to a "residential telephone subscriber who has registered" her "telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." An entity, however, will not be liable for violating this requirement if, before initiating the solicitation, it obtained the person's express invitation or permission:

> Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:
>
> . . . .

8

> (ii) It has obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed[.]

47 C.F.R. § 64.1200(c)(2)(ii). Thus, to succeed on her claim, Sheila must prove that (1) she is a "residential telephone subscriber"; (2) she registered her phone number on the national do-not-call registry; and (3) Vintage Stock initiated a "telephone solicitation" to her. And Vintage Stock may assert as an affirmative defense that it had Sheila's "prior express invitation or permission" to initiate the telephone solicitation. The Court considers Vintage Stock's affirmative defense of "prior express invitation or permission."

Section 64.1200 does not define "prior express invitation or permission," and the Supreme Court and Eighth Circuit have yet to address what it means. *See* 47 C.F.R. § 64.1200(f)(15). "As with any question of statutory interpretation, [the Court] begin[s] with the statute's plain language." *Hodde v. Am. Bankers Ins. Co. of Fla.*, 815 F.3d 1142, 1144 (8th Cir. 2016) (citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011)); *Green v. Brennan*, 578 U.S. 547, 553 (holding that interpretation of a regulation begins with the text). The "most fundamental semantic rule of interpretation" indicates that "[w]ords are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6 (2012).

"[P]rior" ordinarily means "preceding in time or in order." *Prior*, The Random House Dictionary of the English Language, at 1540 (2d unabridged ed., 1987). "[E]xpress" ordinarily means "clearly indicated; distinctly stated; definite; explicit; plain." *Express*, *The Random House supra*, at 683. "[I]nvitation" ordinarily means "the act of inviting," i.e., "request[ing]" someone "to do something." *Invitation*, *The Random House Dictionary supra*, at 1004; *Invite*,

9

*The Random House Dictionary supra*, at 1004. And "permission" ordinarily means "the act of permitting," i.e., "allow[ing]" someone "to do something," or "formal consent." *Permission*, *The Random House Dictionary supra*, at 1443; *Permit*, *The Random House Dictionary supra*, at 1443.

Based on the undisputed facts, the Court finds that Sheila provided Vintage Stock with "prior express invitation" to initiate telephone solicitations to Sheila. When visiting Vintage Stock's store, Sheila entered her number into the VeriFone system. Doc. 72 at ¶ 9. That system clearly stated that one should enter her phone number to receive coupons and sales notices, and it warned that "[m]essage and data rates may apply." Doc. 68-2 at 2. If one entered her phone number into this system, she would undoubtedly expect a few things. One, she would receive coupons and sales notices from Vintage Stock. Two, Vintage Stock would send those coupons and sales notices to the phone number she entered. Three, the coupons and sales would arrive in, at least, message format. (Because this case does not involve a phone call, the Court need not address whether one would expect to receive phone calls regarding coupons or sales notices.) Sheila does not dispute that one would expect these things. In fact, she agreed during her deposition that "[i]f a customer entered [her] phone number on this VeriFone system, [she] should expect to receive messages based on the text of what's included on the VeriFone" system. Doc. 72-2, Sheila Thompson's Depo. Tr. at 59:1–5.

The question thus becomes: did Sheila, by entering her phone number into the system, "ask" or "request" Vintage Stock to send her coupons and sales notices? To "ask" ordinarily means "to try to get by using words; request." *Ask*, *The Random House Dictionary supra*, at 123. And to "request" ordinarily means "to ask or beg (someone) to do something." *Request*, *The Random House Dictionary supra*, at 1636. By entering her phone number, Sheila requested Vintage Stock to send her coupons and sales notices, which it later did. *See* doc. 72 at ¶¶ 8–9

(admitting that Sheila entered her telephone number into the VeriFone system during her first visit, which occurred in September or October 2019); doc. 19-2 at 1 (depicting the first message advertising a Vintage Stock sale that Sheila received on or about July 19, 2021). Accordingly, the Court finds that Vintage Stock has met its initial burden of showing that it obtained prior express invitation to initiate telephone solicitations to Sheila.

Sheila, therefore, must "cit[e] particular materials in the record" to show that whether Vintage Stock obtained prior express invitation is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A)). Sheila points to the conversation she had with a Vintage Stock employee during her first visit to a Vintage Stock store, the same visit during which she entered her phone number into the VeriFone system. *See* doc. 71 at 6–7.

In that conversation, the employee asked Sheila for her phone number for reference during future transactions. Doc. 72-2, Sheila Thompson Depo. Tr. at 55:3–9. The employee explained that, if Sheila wanted to sell back the movies she bought, the store would "need [her] phone number for a reference." *Id.* at 55:5–9. During her deposition, Sheila originally claimed that she responded to the employee by saying "do not send me any advertisements." *Id.* at 54:14–19. But she immediately walked back that statement and explained that when the employee asked for Sheila's phone number, she told the employee that she did not want to receive any advertisements and that she does not give her phone number out because she does not want to receive any advertisement. *See id.* at 54:20–55:11. Despite these statements to the employee, and her professed practice of not giving out her phone number so as to avoid advertisements, Sheila entered her phone number into the VeriFone System. *Id.* at 54:15–18; doc. 72 at ¶ 9.

This conversation does not dispute that Sheila provided her express invitation, by entering her phone number into the VeriFone system, to Vintage Stock to send her coupons and

11

sales notices. The fact that she told an employee that she did not *want* advertisements did not negate that she expressly requested coupons and sales notices. "[A]dvertisement" ordinarily means "a public notice," *Advertisement*, *Merriam-Webster's Dictionary*, at 19 (11th ed. 2020), and would encompass sales notices. Even so, expressing a lack of desire to receive advertisements does not counter expressly requesting coupons and sales notices to be sent to you.

Moreover, even if Sheila did tell the employee that Vintage Stock should not send her advertisements, Sheila has not pointed to any evidence that the employee personally could, or knew how to, prevent Sheila from receiving text messages or negate Sheila's entry of her phone number into the VeriFone system (or, for that matter, negate the notice Sheila received when she did enter her number). Moreover, Sheila fails to produce any evidence that the employee had the authority or ability to override the electronic system.

As explained above, to provide express invitation, one must clearly indicate that she is asking or requesting someone to do so something. Sheila's action of entering her phone number in the VeriFone system—with the notices the system provided to Sheila—clearly did so. And Sheila has not produced any evidence that calls into question that Vintage Stock obtained Sheila's prior express invitation to initiate telephone solicitations to her.

Finally, the Court notes that Sheila raises an argument that she did not consent to receiving the text messages, relying primarily on the asserted fact that Vintage Stock encouraged her to enter her phone number in the VeriFone system and that she never signed a written agreement to receive text messages. Doc. 71 at 6–8, 10–12. This argument relates to whether Sheila gave Vintage Stock "prior express . . . permission," which requires "the act of permitting" or "formal consent." *Permission*, *The Random House Dictionary supra*, at 1073. The Court need not reach the issue of "prior express . . . permission" because Sheila gave Vintage Stock "prior express invitation" to send her text messages. 47 C.F.R. § 64.1200(c)(2)(ii).

12

Accordingly, the Court holds that Sheila gave Vintage Stock "prior express invitation" to send her text messages, rendering her individual TCPA claim meritless, and therefore grants Vintage Stock summary judgment on this claim. Further, because Sheila has failed to prosecute her class TCPA claim, the Court dismisses Sheila's class TCPA claim without prejudice to the putative class. Fed. R. Civ. P. 41(b); *cf.* Fed. R. Civ. P. 23(e) (requiring court approval for dismissals of certified classes).

### B.   Dennis's TCPA claim

Vintage Stock also moves for summary judgment on Dennis's individual and class TCPA claims, arguing that Dennis lacks standing to assert this claim because he did not suffer an injury in fact and that he has not pursued his class TCPA claim. *See* doc. 67 at 6, 10–11. "To establish an injury in fact, a plaintiff must show an injury that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Dennis has conceded the merit of Vintage Stock's argument. Dennis admitted, under oath, that he did not receive any text messages on his cellphone and that he does not use Sheila's cellphone, the cell phone that received the text messages. Doc. 68-7, Dennis Thompson Depo. Tr. at 13:5–10; *see also* doc. 71 (failing to address Vintage Stock's standing argument in any way). Because Dennis did not receive a text from Vintage Stock, he has not suffered an injury in fact and therefore does not have standing to assert a section 227(c)(5) claim. Accordingly, the Court remands Dennis's individual and class TCPA claims for lack of subject-matter jurisdiction. *Hillesheim*, 903 F.3d at 791–92 (requiring a court to remand—not dismiss—a removed claim if the federal court lacks subject-matter jurisdiction).

C.    **The Thompsons' Missouri do-not-call-list claim**

Because the Court has dismissed all federal claims and finds no reason to continue exercising supplemental jurisdiction over the Thompsons' Missouri do-not-call-list claim, the Court declines to exercise supplemental jurisdiction over that claim and remands it to state court. 28 U.S.C. § 1367(c) (allowing a district court to "decline to exercise supplemental jurisdiction over" claims that are not within its original jurisdiction if the "court has dismissed all claims over which it has original jurisdiction").

IV.    **Conclusion**

For these reasons, the Court grants in part and denies in part Vintage Stock's [66] Motion for Summary Judgment. The Court grants summary judgment in favor of Vintage Stock on Sheila's individual TCPA claim and dismisses, with prejudice, that claim. The Court further dismisses, for failure to prosecute, Sheila's class TCPA claim, without prejudice to the putative class members. The Court remands, for lack of subject-matter jurisdiction, Dennis's individual and class TCPA claims to the Circuit Court of St. Louis County, 21st Judicial Circuit of Missouri. And the Court declines to exercise supplemental jurisdiction over the Thompsons' Missouri do-not-call-list claim and remands that claim to the Circuit Court of St. Louis County, 21st Judicial Circuit of Missouri. Pursuant to 28 U.S.C. § 1447(c), the Court directs the Clerk of Court to mail a certified copy of this order of remand to the clerk of the state court. A separate Judgment and Order of Partial Remand accompanies this order.

So ordered this 3rd day of February 2025.

_SL R. CQ_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE